CITY OF NEW BRUNSWICK, PROSECUTOR, v. THE BOARD
   OF CONSERVATION AND DEVELOPMENT ET AL., RE-
   SPONDENTS.

Argued November 6, 1919—Decided January 16, 1920.

1. Where three companies jointly petitioned the board of conserva-
   tion and development for the approval of plans to divert water
   from streams to supply it, through a continuous pipe line for
   lateral distribution to numerous municipalities, one contributing
   to the other under lawful contracts, an order of the board ap-
   proving the plans, and limiting the gross amount to be taken to
   serve the purposes of the three, each having a lawful right to
   take water from the same source, is within the authority of the
   board.
2. An unlimited right to take water from any source granted by
   charter will not be modified by a supplement to that charter
   granting the right of condemnation limited to a specific locality.
3. The state board has the right to subject the consent of the state
   to a diversion of water for public use to a condition that the peti-
   tioners pay an equitable share of the cost of empounding storm
   water along the streams from which the diversion is permitted, if
   that shall become necessary for the benefit of other applicants.

On *certiorari.*

Before Justices TRENCHARD and BERGEN.

For the prosecutor, *Robert H. McCarter.*

For the respondents, *Frank Bergen.*

The opinion of the court was delivered by

BERGEN, J.   The Elizabethtown Water Company, the
Plainfield-Union Water Company, and the Middlesex Water
Company, in conjunction with two other companies engaged
in the same business, viz., furnishing the inhabitants of,
primarily, the counties of Somerset, Middlesex, and Union
with a supply of water for domestic and public uses, requiring
an additional supply of water for that use, and proposing to
obtain it by diverting water from the Raritan and Millstone

rivers near their junction in the county of Somerset, filed a joint petition accompanied with maps and plans indicating the method of diversion, as required by the statute, with the board of conservation and development, a state agency to which the legislature has delegated the power to approve plans in such cases, the statute declaring, "The approval of the commission shall constitute the state's assent to the diversion of water." After notice to parties interested, and following a hearing, the state board approved the plans as to the three companies herein before specifically named and denied it as to the two other companies, and made an order to that effect, which is the matter brought under review by this writ. The plan as approved contemplates the erection of works sufficient to divert from the two rivers a quantity of water not in excess of twenty million gallons per diem. The order challenged recites that it was made subject to certain terms and conditions, those pertinent being (*a*) that it shall constitute the assent of the state to the diversion of water from the rivers to the extent above stated, but shall not be construed to increase any rights of the petitioners which they had under any statute enacted prior to chapter 252 of laws of 1907, nor should its acceptance be taken to be a waiver by the petitioners of any such rights; (*b*) that the order should not limit the right of the state to grant its consent to others to take water from either of the rivers or their tributaries; (*c*) that the order should not be taken to grant to either of the petitioners a right to supply water in any territory in which they had not then such right; (*d*) that the board reserved the right to provide for the storage, in the future, of the storm waters along the rivers or their tributaries, if that should become necessary to provide the amount required to supply water to those lawfully entitled to take it, and to apportion the expenses of providing the storage between the petitioners and other lawful applicants in such manner as may be equitable. This order, subject to such limitations and conditions, was properly accepted by the defendants. The junction of the two rivers is in the county of Somerset, and thereafter the water of the two flows, under

the name of the Raritan river, easterly and southerly between the counties of Somerset and Middlesex until it passes the city of New Brunswick, and is finally discharged into the ocean. The evidence in this case is plenary that all that portion of the state lying between the proposed intake and Staten Island sound, especially in the counties of Middlesex and Union, is quite densely populated, and that the present source of water supply is becoming so scanty that some other means must be taken to furnish the required quantity, and that the proposed method is the most available, if not the only reasonable source of supply, and that if the flood waters of the two rivers should be empounded and stored to prevent their waste, the supply would be, according to present foresight and knowledge, ample for the territory proposed to be supplied. The meritorious objection, distinguished from the legal aspect of this controversy, as advanced by the prosecutor, is that the city of New Brunswick has a legislative grant to divert the water of the Raritan river for the domestic and public uses of its citizens, and that the diversion of the quantity of water allowed by the order will injuriously interfere with such grant, and that it should not be deprived of water flowing by its door in a natural water course for the benefit of others less favorably situated. The state board found, and there is evidence to support it, that this claim was not true in fact and that the quantity of water to be withdrawn will not appreciably interfere with the grant to the city, and with this finding we agree. It is admitted that the Raritan river is subject to the ebb and flow of ocean tides along the city of New Brunswick and for a considerable distance beyond, but to what extent it is impregnated with salt water the evidence does not show with any clearness, but common knowledge teaches that the flow of the river in the neighborhood of New Brunswick must be influenced by such tides.

In support of this writ the prosecutor urges that under the statute only one person or corporation can present a plan for approval of the state board, and therefore, although these three applicants are now acting in conjunction and propose to use one main pipe to distribute the water, under contracts

between them, there can be no joint application for the approval of single plan applicable to all. To this we do not accede, for the ninth section of "An act relative to statutes" (*Comp. Stat. p.* 4972) provides that any word used in a statute importing a singular number shall be construed to include plural numbers. In this case, as we understand it, the diversion is to be made through connecting pipes, one being for the benefit of the other two under contracts, which the respective parties have a right to make, and manifestly the amount of water which the board would be justified in consenting, on behalf of the state, to be diverted would depend upon the interest to be served, and it is quite proper that all of these companies who are to participate in this diversion should jointly apply in order that the board might have before it all the conditions to which the diversion petitioned for was intended to apply.

The next point urged by the prosecutor is that the conditions set out in the order are illegal. On this branch of the case it is urged that the condition that the petitioners will not be held to have waived, by the acceptance of the order, other legal rights which they claim to possess, is an admission by the state board that the petitioners did not need the consent of the state for the proposed diversion. If this be granted we fail to see how the prosecutor is injured, but as we view this condition or reservation it is nothing more than saying that the board will approve the plans, and give the consent of the state to the diversion, but do not intend thereby to increase or affirm any rights you claim to have, nor will you be held to have waived any such rights by the acceptance of the order, leaving all such to be settled in the proper forum. We see no error in this.

It is next urged by the prosecutor that the Elizabethtown Water Company is limited by its charter to obtaining water for distribution to that which it may obtain in the county of Union, and therefore not entitled under the law to go into the county of Somerset and obtain any additional supply therefrom. The Elizabethtown Water Company was incorporated in 1854 (*Pamph. L., p.* 203) and that charter does

not limit the company to obtaining water in the county of Union. Section 4 of the act provides "It shall and may be lawful for the corporation created by this act, and they are hereby empowered to make contracts with persons and corporations for the supply, use, and preservation of water, and to erect, construct, and maintain all works necessary * * * for the fulfillment of the purpose of this act." Section 7 provides "That if the water now contemplated to be used by the said commissioners for the purpose of this act of incorporation, should by reason of the increased demand therefor be insufficient to supply the demand, it shall be lawful for the said corporation, and they are hereby empowered to procure an additional supply of water from other sources, and to erect and construct the necessary works therefor." Clearly this charter does not limit the corporation to obtaining its supply of water in the county of Union, particularly when we know that on the date of the passage of this act no such political subdivision as the county of Union existed. This charter, however, did not grant any power of condemnation, and the legislature in 1872 (*Pamph. L., p.* 874) undertook to supply that deficiency by enacting a supplement to the original charter, the second section of which authorized the corporation to do any and all lawful acts necessary to procure water for the use of the citizens of the city of Elizabeth and places adjacent thereto, and that it should be lawful for the company "to enter at all times upon all lands in the county of Union and survey, excavate, and bore for water," and when the location should have been determined cause a map to be made and file the same in the office of the clerk of the county of Union; and then it should be lawful for the company to enter upon or hold the same, and to take such water as they might need, subject to such compensation as the act thereafter provided. The residue of the act provides for compensation by agreement or condemnation. All this supplement does, if it does that, about which we express no opinion, is to limit the power of condemnation to lands and water taken in the county of Union, and in no way limits the power granted by the original charter to obtain water from other sources by contract.

The next point made is that the board had no legal authority to reserve to itself any power relating to the future storage of storm water, and the apportionment of its cost between the parties entitled to participate in its use. This is nothing more than an agreement by the petitioners to pay a portion of the expenses, if it should become necessary, of providing, in the future, for the storage of storm water. In other words the state board apprehended a future demand for water in excess of the ordinary flow of the two rivers, and the requirement of storage of storm water, which the statute permits, exacted from the petitioners a promise to pay their share of such expense because manifestly it might become very essential to the petitioners to have storm water stored if it should happen that the present flow was not sufficient to supply the demands of municipalities entitled to a supply of water. And while the condition does not impose terms on any subsequent applicant for the use of water which it might become necessary to store, we think the board exercised a wise precaution in making it a condition of this consent that if the public interest required the empounding of the storm water of these two rivers these applicants should bear their share of the expense.

It is also urged that the order which the commissioners made is illegal because their power is limited to the approval or rejection of plans offered, and that it has no power to approve a part of a plan, or to modify or limit its application by any reservation or condition. Section 3 of the act under which the commissioners act (*Pamph. L.* 1907, *p.* 634; *Comp. Stat., p.* 5798) declares, "The commission shall decide whether the plans proposed are justified by public necessity or reasonably anticipated public use, and whether such plans interfere unduly with the opportunity of other municipalities to obtain a water supply by the taking of waters necessary for their use, or whether the reduction of the dry season flow of any stream will be caused to an amount likely to produce unsanitary conditions or otherwise unduly injure public or private interest. Such commission shall, within ninety days after receiving the application, * * * reject it entirely, or ap-

prove the same subject to such reasonable terms and conditions as the commission may prescribe." This statute seems to be ample to justify the imposition of reasonable terms and conditions, and as we have said the conditions and terms embodied in this order are not unreasonable.

The next point is that the order is an undue interference with the rights of the prosecutor. This could hardly be acceded to unless it be admitted that prosecutor has an exclusive right to take all the water in the river, for the board after hearing testimony decided that the quantity permitted to be taken left sufficient water in the river for the use of the prosecutor, and the evidence shows that it now has a supply of water and has taken no steps to avail itself of the Raritan river as a source of supply, and it never may, while in the meantime a very valuable and natural element necessary to life flows passed the city to the sea.

The little water taken from the river held back in Lawrence brook by tides is negligible and it is probable the water of the brook does not at once mingle with that of the river at that point because dammed by the tide. We concur in the findings of facts made by the board of conservation and development, and find no error of law in this record which requires us to set aside the order. The order under review will be affirmed, with costs.